Filed 9/8/25

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| QINGLONG HU,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>CITY OF SAN JOSÉ,<br><br>  Defendant and Respondent. | H051724<br>(Santa Clara County<br> Super. Ct. No. 21CV378255) |

Plaintiff Qinglong Hu crashed his bike on Bailey Avenue while moving into the roadway to skirt debris and gravel obscuring the bike lane. Hu sued the City of San José, alleging that a dangerous condition of public property caused his accident. Granting summary judgment for the city, the trial court discerned a triable issue of material fact on the existence of a dangerous condition in the bike lane but reasoned that Hu's claim failed as a matter of law because he entered the vehicle lane before he fell and could not say precisely why he fell. The court also ruled that Government Code section 831.4, subdivision (b) immunizes the city from suit because its "trail immunity" applies to Bailey Avenue's bike lane.[1]

In the unpublished portion of this opinion, we agree with the trial court that there is a triable issue of material fact about the existence of a dangerous condition, but we

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II(A) and (C).

[1] Undesignated statutory references are to the Government Code.

conclude that the city did not negate causation. In the published portion, we hold that section 831.4, subdivision (b) does not apply to a bike lane, or Class II bikeway (see Sts. & Hy. Code, § 890.4, subd. (b)), on a city street or highway. We will accordingly reverse the judgment.

## I.    BACKGROUND

### A.    *Hu's Complaint and the City's Answer*

Hu alleged that he "was riding his bicycle in the bicycle lane when the bicycle lane ended forcing [him] to merge into the vehicle lane. The [vehicle] lane . . . was covered in potholes, uneven roading, and debris causing [him] to crash and sustain . . . damages." Hu sued the City of San José, alleging that his crash was caused by a dangerous condition on its property.[2]

In answer, the city generally denied Hu's allegations and asserted as an affirmative defense that it was "not liable for any injury or damages . . . pursuant to . . . Government Code [section] 830 et seq."

### B.    *Summary Judgment and Appeal*

The city moved for summary judgment on three grounds: (1) the condition was "trivial and obvious" so the city was under no duty to correct it; (2) Hu had no evidence of what caused his injuries; and (3) the city had no liability because the accident occurred on a " 'trail' " within the meaning of section 831.4, subdivision (b).

The city submitted evidence that Hu crashed on Bailey Avenue, a paved rural road near recreational areas. Hu took a photograph of the scene, which he testified at deposition depicted the road as it had been on the day of the accident. Hu drew a red line on the photograph showing his approximate path of travel.

---

[2] Hu also named the County of Santa Clara as a defendant, but this appeal concerns only Hu's claims against the city.

2



As shown in the photograph, Hu's route took him downhill around a bend under some trees, from a more recently paved segment of the roadway to a more dilapidated segment. The bike lane is marked off from the vehicle lane by a white stripe, but the bike lane and the stripe become obscured along the route under debris, dirt, and loose gravel.[3] A few feet before the disappearance, a second white stripe branches off the first, marking a buffer zone between the bike lane and the principal lane of traffic. The buffer zone is also cluttered with debris, dirt, and loose gravel. The second white line disappears into a pothole followed by uneven pavement and a second pothole. The vehicle lane was free of debris, dirt, or gravel, except for the gravel in and near the potholes. The bike lane

---

[3] The debris appears to be plant matter, such as bark and sticks.

reappears further down the road.



As roughly delineated in the first image, Hu exited the bike lane into the buffer zone before the point where debris encroached on the bike lane. In the buffer zone, Hu's path took him across debris and loose gravel. While in the debris or gravel, Hu veered further left, between two potholes, to enter the vehicle lane. That path took him over uneven pavement in the vehicle lane. Hu fell while he was still turning left to enter the vehicle lane. It is unclear from the record whether the end of the red line indicates the position of Hu's front tire, back tire, or somewhere in between at the time he fell.

Describing the crash, Hu testified that he "was riding on the bike lane, and then when [he] reached . . . this point, because [the] bike lane [was] gone and [he had] to move – [he] had to arrange his bike to go to the car lane because [the] car lane [was] still completely . . . okay. [¶] So [he] turn[ed] left on [his] bike to the . . . car lane [and] fell off the bike" sliding in the car lane and "kind of" losing consciousness. Hu could not pinpoint the exact spot the accident happened because "it happened so fast."

4

The trial court granted summary judgment, adopting two of the city's three grounds. First, the trial court concluded, based on the pictures of the scene, that there was a triable issue of material fact as to whether a dangerous condition existed in the bike lane. Second, the trial court concluded, based on Hu's deposition testimony and the photograph on which he drew the red line, that Hu could not establish that the alleged dangerous condition caused his fall—"[Hu] does not know why he fell, he only knows that he did fall and that he fell after he cleared the debris." Third, the trial court ruled that the bike lane on Bailey Avenue is covered by absolute trail immunity, so even if Hu's injury was caused by a dangerous condition in the bike lane the city had no liability.

Hu timely appealed.

## II.  DISCUSSION

As is well established, when a defendant has prevailed on summary judgment, " ' "we review the record de novo to determine whether [they have] conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." ' " (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) The moving defendant "bears the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) And unless the defendant makes a prima facie showing of the nonexistence of a triable issue of material fact, the burden does not shift to the plaintiff to raise a triable issue. (*Aguilar*, at p. 850.)

In our independent judgment, the city did not conclusively establish that it is entitled to judgment. (See *Aguilar*, *supra*, 25 Cal.4th at p. 850.) As the trial court correctly ruled, a reasonable person could conclude that the condition of Bailey Avenue created a substantial risk of injury when it was used with due care in a reasonably

5

foreseeable manner. (§ 830.2.) And viewing the city's evidence most favorably to Hu, a reasonable person could conclude that the dangerous condition was a substantial factor in causing Hu's harm. (See, e.g., *Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 312 (*Bowman*).) As for the city's claim of immunity, we conclude from the undisputed facts that Bailey Avenue's bicycle lane is not a "trail" within the meaning of section 831.4, subdivision (b).

A. ***Dangerous Condition of Public Property* [NOT CERTIFIED FOR PUBLICATION]**

The city, through its summary judgment evidence, did not carry its "initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact" regarding (1) the existence of a dangerous condition; or (2) causation. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

1. ***General Principles***

A public entity's liability for injury is limited by statute. (§ 815.) But a public entity may be "liable for injury caused by a dangerous condition of its property" when, among other elements not disputed here, "the property was in a dangerous condition at the time of the injury, . . . the injury was proximately caused by the dangerous condition, [and] . . . the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred." (§ 835; see also *Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 757–758 (*Cole*) [listing essential elements].)

"A condition is not a dangerous condition . . . if the trial or appellate court . . . determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature . . . that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (§ 830.2; see also *Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 566–568 (*Stathoulis*).)

6

"To establish causation, a plaintiff must prove that the defendant's conduct was a 'substantial factor' in bringing about his or her harm. [Citations.] Stated differently, evidence of causation 'must rise to the level of *a reasonable probability based upon competent testimony*. [Citations.] "A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action." [Citation.] The defendant's conduct is not the cause in fact of harm " 'where the evidence indicates that there is less than a probability, i.e., a 50-50 possibility or a mere chance,' " that the harm would have ensued.' " (*Bowman*, *supra*, 186 Cal.App.4th at p. 312.)

### 2. *Existence of a Dangerous Condition*

In the trial court, the city argued that the conditions depicted in Hu's photographs revealed no dangerous condition because the organic material, gravel, potholes, and uneven pavement constituted either trivial or obvious defects. The trial court ruled that "reasonable minds could come to different conclusions as to whether [the obstacles depicted in the photographs] would create a hazard such that there was a substantial risk of injury when the bike lane was used with due care in the manner in which it was reasonably foreseeable that it would be used." So it determined that there was a triable dispute of material fact about the existence of a dangerous condition in the Bailey Avenue bike lane at the time of the crash. We agree that a reasonable person could determine that there was a dangerous condition in the bike lane, but we conclude that the dangerous condition could include the loose gravel and potholes extending to the right edge of the vehicle lane.[4]

---

[4] We may affirm a summary judgment on a ground not relied upon by the trial court, at least where the parties had an adequate opportunity to address the ground in the trial court and on appeal. (*Altizer v. Coachella Valley Conservation Com.* (2023) 94 Cal.App.5th 749, 753, fn. 4; see also *White v. Smule, Inc.* (2022) 75 Cal.App.5th 346, 364 [summary judgment may only be affirmed on "a 'ground that the parties had an adequate opportunity to address in the trial court' "]; *Reed v. City of Los Angeles* (2020) 45 Cal.App.5th 979, 982 [" ' "We must affirm a summary judgment if it is correct on any

7

To assess whether a defect is trivial as a matter of law, courts consider the type and size of the defect; contextual factors such as weather, lighting, and visibility; the existence of debris or obstructions, and the plaintiff's knowledge of the area. (*Stathoulis*, *supra*, 164 Cal.App.4th at pp. 567–568 [sidewalk defect]; see also *Nunez v. City of Redondo Beach* (2022) 81 Cal.App.5th 749, 758 [breaking sidewalk defect analysis into two steps, first considering the type and size of the defect and, "if that analysis reveals a trivial defect," considering other factors bearing on whether the defect presented a substantial risk of injury]; but see *Stack v. City of Lemoore* (2023) 91 Cal.App.5th 102, 123 (*Stack*) [rejecting consideration of plaintiff's knowledge of the area in the triviality analysis].) If reasonable minds can differ as to whether the nature and quality of the defect at issue presented a substantial risk of injury, summary judgment is improper. (*Stathoulis*, at pp. 569–570.)

Viewed most favorably to Hu, a reasonable person could conclude that the city's evidence depicting the accident scene showed a dangerous condition on Bailey Avenue. Considering the debris, dirt, and loose gravel, a reasonable person could conclude that a cyclist attempting to ride on the side of the road where the bicycle lane had been, even as far toward the center of the road as inside the edge of the vehicle lane, would face a substantial risk of injury by falling from their bicycle.

Indeed, one of the city's principal arguments in the trial court was that the allegedly dangerous conditions on Bailey Avenue were so obvious that it was not foreseeable that a bicyclist would try to navigate them—the city suggested instead that a reasonable cyclist would either avoid the issues by entering the vehicle lane before encountering them or dismounting to walk.[5]

_____

of the grounds asserted in the trial court, regardless of the trial court's stated reasons" ' "].)

[5] The city also suggested that Hu was negligent because he failed to take the measures it proposed. But "[t]he status of a condition as 'dangerous' for purposes of the

8

The city quoted *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438 for the rule that "[f]oreseeability of harm is typically absent when a dangerous condition"—there an empty swimming pool—"is open and obvious." (*Id*. at p. 447.) In *Jacobs*, the court ruled that it was unforeseeable as a matter of law that the plaintiff " 'would knowingly embrace an entirely obvious risk by voluntarily using the diving board on an empty pool for a purpose for which it was not intended.' " (*Id*. at pp. 448–449.) Here, in contrast, Hu was using a bicycle lane for its intended purpose when he encountered a dangerous condition extending from the bicycle lane into the vehicle lane. The foreseeability of a fall such as Hu's is, on the city's evidence, subject to reasonable factual dispute. And, in prosecuting a claim for dangerous condition of public property, the obviousness of the defect is something Hu must prove as an element of his claim if he relies on a theory of constructive notice. (See, e.g., *Martinez v. City of Beverly Hills* (2021) 71 Cal.App.5th 508, 519–521.) To hold that the defect was trivial because it was "obvious" would make it impossible to proceed on a constructive notice theory.

At bottom, the dangerousness of Bailey Avenue's condition, including a reasonable cyclist's foreseeable response to the visible conditions, are subject to reasonable dispute, and properly reserved for trial.[6]

---

statutory definition does *not* depend on whether the plaintiff or other persons were actually exercising due care but on whether the condition of the property posed a substantial risk of injury to persons who *were* exercising due care." (*Cole*, *supra*, 205 Cal.App.4th at p. 768; see also *Stack*, *supra*, 91 Cal.App.5th at p. 120.)

[6] Even assuming that we may properly consider the city's evidence that Hu was familiar with the route and that the conditions at the time of accident were good (cf. *Stack*, *supra*, 91 Cal.App.5th at p. 123), this evidence does not tip the scales in the city's favor as a matter of law.

### 3. *Causation*

To prevail at trial, Hu would also have to prove that the dangerous condition proximately caused his injury. (See *Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1106.) To be a proximate cause, the dangerous condition need not itself injure a plaintiff, so long as it foreseeably precipitated the plaintiff's injury. (See *Cole*, *supra*, 205 Cal.App.4th at pp. 759, 777–778 [reversing defense summary judgment where road alignment created risk that motorists would drive into gravel area to avoid stopped traffic, and evidence permitted inference that the driver who struck plaintiff standing in the gravel did so in bypassing an obstruction in the road].)

Hu contends that the summary judgment record supported a reasonable inference that the dangerous condition in the bike lane caused his injury, even if he cannot point to any specific defect in Bailey Avenue that contacted his tires. We agree. The record permits alternative inferences that Hu was felled by foreseeable direct contact with the gravel or debris creating the dangerous condition or because by foreseeable evasive action to avoid contact, either of which would support proximate causation.

Hu's effort to skirt the bike lane obstruction took him from the bike lane through the buffer zone and into the vehicle lane. In the buffer zone, he traveled over debris and gravel and entered the vehicle lane between two potholes, across a patch that ended in uneven pavement. It is unclear where his front and rear tires were positioned when he lost control of the bicycle, but drawing reasonable inferences in Hu's favor, we view the record as suggesting that at least Hu's back tire was still in contact with the loose gravel and dirt in the buffer zone when he lost control. This is consistent with his approximation of the point where he fell, the condition of Bailey Avenue, and the absence of any more compelling alternative explanation for his loss of control. (See *Bowman*, *supra*, 186 Cal.App.4th at p. 312.) And in any event it is reasonably inferable that Hu lost control of his bicycle because he was making a turn to avoid the dangerous

10

condition on Bailey Avenue, from which one can reasonably conclude that the dangerous condition caused his fall.

The trial court's conclusion that Hu was clear of all debris before he fell, though reasonable, does not draw all reasonable inferences in Hu's favor as the nonmoving party.[7] Hu drew a single red line approximating his line of travel. Even assuming absolute precision in Hu's manual delineation of his path, Hu testified the endpoint represented "the area [where he] fell off", not whether it corresponded to the front or back of Hu's bicycle or some point between. And if the endpoint of that red line marked the location of his front tire when he lost control, a reasonable fact finder could infer that his rear tire was still in the gravel scattered in the buffer zone—the outer edge of that combination of debris, loose gravel, potholes, and uneven pavement that we have explained could reasonably be considered a dangerous condition.[8]

Nor does Hu's inability to identify the "exact[]" obstruction that caused his fall compel the conclusion that he cannot prove the dangerous condition caused his fall. The city's evidence showed the dangerous condition on Bailey Avenue and that Hu fell as he tried to navigate through the dangerous condition. This is enough to support a reasonable conclusion that the dangerous condition caused Hu to fall.

---

[7] The city's appellate argument that the line Hu drew on the photograph shows that his path avoided "all the obstructions" is inconsistent with the photograph showing that Hu rode across tree debris, loose gravel, and uneven pavement.

[8] The city represents that Hu "conceded at the [m]otion hearing that there was no evidence indicating the cause of the crash." We disagree. At the cited page of the transcript, Hu's counsel argued, "If you look at the photograph in and of itself that shows that there is a lot of debris and uneven road surface, and its determination of whether or not that caused him to fall is still a determination of fact. It is a disputed fact." Counsel admitted that the record lacked a plain statement from Hu that "this is why [he] fell," but argued that the reason Hu fell could be "reasonably inferred" from the evidence in the record.

11

*Buehler v. Alpha Beta Co.* (1990) 224 Cal.App.3d 729 does not help the city.  In that slip and fall case, "the deposition testimony indicated the absence of a slippery or otherwise defective condition." (*Id*. at p. 734.)  That being so, "all appellant [could] argue [was] that she slipped and fell.  She lost her balance for some unknown reason.  She did not see anything on the floor which caused her to slip and fall and did not know what caused her to slip." (*Ibid*.)  Here, the city's summary judgment evidence supported reasonable inferences that there was a dangerous condition on Bailey Avenue and that Hu fell while traveling through the dangerous condition.

The city's reliance on cases involving unsecured gates is similarly misplaced.  In each of these, causation was lacking because there was no evidence the gate in question had been the avenue by which harm befell the plaintiff or plaintiffs' decedent.  In *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 483, summary judgment was proper because the plaintiff could not show that failure to repair a broken security gate caused her to be raped by a third party, absent "evidence that the rapist entered or departed through the broken gate (or even that the broken gate was the only way that he could have entered or departed)." (See also *id*. at pp. 476, 481–488.)  In *Padilla v. Rodas* (2008) 160 Cal.App.4th 742, 745, 752–753, a parent could not prove that the omission of a self-latching feature on one gate caused her toddler's drowning when there was no evidence that the child accessed the pool through the gate as opposed to other available access points.  (See also *Showalter v. Western Pacific R. R. Co.* (1940) 16 Cal.2d 460, 471 ["Evidence which leaves the determination of [causation] in the realm of mere speculation and conjecture is insufficient"].)  Here, in contrast, the city's own evidence suggests—without resort to "speculation" or "conjecture"—that Hu was traversing the dangerous condition when he fell.

The city's claim that Hu "moved out of the bike lane not because of any debris in the bike lane, but because the bike lane had ended" is likewise unpersuasive.  Hu said that he reached a point where the bike lane was "gone" and he had to move into the car lane

12

because the car lane was still "okay." But as reflected in the photographs, the bike lane was "gone" only because it was covered with debris, dirt, and loose gravel. Indeed, the buffer zone disappeared in much the same way. The loss of the bike lane and buffer zone in this mess of obstacles was one aspect of the dangerous condition of the road, it was not an independent cause of the accident unrelated to the dangerous condition.

## B. *Trail Immunity*

Public liability for harm caused by dangerous conditions under section 835 does not extend to recreational "trails" and similar features. (See *Burgueno v. Regents of University of California* (2015) 243 Cal.App.4th 1052, 1058–1059 (*Burgueno*); § 831.4.) We need not interrogate the full scope of what may be included in section 831.4's definition of a trail, because the statute identifies relevant exclusions: A city street is not a trail under section 831.4, and because the bicycle lane here is part of Bailey Avenue, it was the city's burden on summary judgment to adduce evidence that Bailey Avenue is not a city street. Because the city did not do so, it is not immune from liability for a dangerous condition in this bicycle lane.[9]

### 1. *General Principles*

Under section 831.4, subdivision (a), a public entity is not liable for an injury caused by the condition of "[a]ny unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas," so long as it is not a "(1) city street or highway or (2) county, state or federal highway or (3) public street or highway of a . . . district . . .

___

[9] Although the parties frame the issue differently, this argument relates to the city's initial burden to show the nonexistence of any triable issue of material fact on its affirmative defense. (See *Aguilar*, *supra*, 25 Cal.4th at p. 850.) If Bailey Avenue is beyond the scope of trail immunity as a matter of law because it is a city street, then the facts in the city's separate statement about Bailey Avenue's proximity to recreational amenities are insufficient to satisfy the city's initial burden, as they do not address whether or not Bailey Avenue is a city street.

formed for the improvement or building of public streets or highways." Subdivision (b) extends immunity to "[a]ny trail used for the above purposes." And subdivision (c) extends qualified immunity to "[a]ny paved trail, walkway, path, or sidewalk on an easement of way which has been granted to a public entity, which easement provides access to any unimproved property."

Section 831.4, together with section 831.2's provision of immunity for an injury caused by a natural condition of any unimproved public property, affords public entities " 'an absolute immunity from liability for injuries resulting from natural conditions of a [public] park area where the only improvements are recreational access roads (as defined in Section 831.4) and hiking, riding, fishing and hunting trails.' " (*Armenio v. County of San Mateo* (1994) 28 Cal.App.4th 413, 416, quoting comments of relevant legislative committees.) Its purpose is " 'to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State' " and "to encourage public entities to open their property for public recreational use," free of " 'the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use.' " (*Id.* at p. 417.)

" 'Whether a property is considered a "trail" under section 831.4 turns on "a number of considerations," including (1) the accepted definitions of the property, (2) the purpose for which the property is designed and used, and (3) the purpose of the immunity statute.' " (*Nealy v. County of Orange* (2020) 54 Cal.App.5th 594, 603.) Trail immunity extends " 'to bike paths, both paved and unpaved, to trails providing access to recreational activities, and to trails on which the activities take place.' " (*Burgueno*, *supra*, 243 Cal.App.4th at p. 1060 [holding that trail immunity applies even if the trail is used for both recreational and nonrecreational purposes].)

14

## 2.     *The Bailey Avenue Bicycle Lane*

Accepting that both Bailey Avenue and its bicycle lane can be used for recreation and to access recreational areas, the bicycle lane does not, on the summary judgment record, fit within the accepted definitions of a "trail" or the purpose of the immunity statute:  Because Bailey Avenue is a city street excluded from the definition of a "trail," the bike lane within it is not a trail.

The statute extends immunity—absolute or qualified—for injuries on "unpaved road[s]," "[a]ny trail[s]," and "paved trail[s], walkway[s], path[s], or sidewalk[s] on [certain] easement[s] . . . provid[ing] access to any unimproved property."  (§ 831.4.) But the statute's plain terms exclude city streets and highways.  Indeed, the statute addresses the possibility that a "city street" could be an unpaved road and expressly provides that the immunity applicable to unpaved roads does not extend to city streets. (§ 831.4, subd. (a).)  Given the exclusion of city streets from the statutory conception of an unpaved road, it would be at best incongruous to read the statute to shield the city from liability for dangerous conditions on a paved city street like Bailey Avenue.

Section 831.4's unambiguous exclusion of city streets is consonant with the provision's purpose—to encourage public entities to open public property for recreational use by relieving them of the burden and expense of keeping such property in a safe condition.  (*Burgueno*, *supra*, 243 Cal.App.4th at p. 1059.)  City streets and highways are open to the public, subject to statutory regulation.  The segregation of a of a bike lane on a city street does nothing to alter the street's purpose:  It regulates the street's traffic, and purports to do so in furtherance of user safety rather than in spite of it.  A city street cannot be a trail, or else the exclusion of city streets from unpaved roads would be futile. (Cf. *Amberger-Warren v. City of Piedmont* (2006) 143 Cal.App.4th 1074, 1079 (*Amberger-Warren*) [supplying definitions of trail, including " ' "a marked or established path or route" ' " and a " 'path or track' " (italics omitted)].)

15

The city does not argue that a city street fits within the accepted definition of a "trail" or the Legislature's intent. (Cf. *Lee v. Department of Parks & Recreation* (2019) 38 Cal.App.5th 206, 212 [analyzing whether winding stairway built into path on a hill from crude natural materials fit within accepted definition of a trail]; *Amberger-Warren*, *supra*, 143 Cal.App.4th at p. 1079 [holding that pathway through a park fits "accepted definitions" of "trail" because " 'path' " is synonymous with trail].) Instead, without engaging any accepted definitions of a "trail" under the Government Code, the city relies on the Vehicle Code and the Streets and Highways Code to contend that the bike lane is not part of the street and can therefore be a trail even if the street is not. As the city points out, the Vehicle Code definition of a street is "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel." (Veh. Code, § 590.) And under a provision of the Streets and Highways Code enacted after the most recent amendment of section 831.4, a bicycle lane "provide[s] a restricted right-of-way designated for the exclusive or semiexclusive use of bicycles with through travel by motor vehicles or pedestrians prohibited, but with vehicle parking and crossflows by pedestrians and motorists permitted." (Sts. & Hy. Code, § 890.4, subd. (b).) In the city's view, then, Bailey Avenue comprises both the street—the area between the bike lanes where motor vehicles can travel—and the bicycle lanes—the margin of the roadway where vehicles may cross and park but not otherwise travel.

It is true that " 'absent indications to the contrary, "a word or phrase . . . accorded a particular meaning in one part or portion of the law, should be accorded the same meaning in other parts or portions of the law . . . ." ' " (*Satele v. Superior Court* (2019) 7 Cal.5th 852, 859.) But the scope of what constitutes a "street" or "highway" varies according to context, even under the Vehicle Code.[10] For example, Vehicle Code

---

[10] In the Vehicle Code, "street" and "highway" have the same definition and each includes the other. (Veh. Code, §§ 590, 360.)

section 21207, subdivision (a) explains that local authorities may, "upon highways," establish "bicycle lanes separated from any vehicular lanes," suggesting that the bicycle lane remains part of the highway, if distinct from other highway lanes. And Vehicle Code section 555 defines even the " '[s]idewalk' " as "that portion of a highway, other than the roadway, set apart by curbs, barriers, markings or other delineation for pedestrian travel." If a structurally distinct sidewalk is part of a highway, then a bicycle lane in the roadway itself is as well. (See *Amberger-Warren*, *supra*, 143 Cal.App.4th at pp. 1080–1081 [collecting definitions of "sidewalk," some of which treat sidewalk as part of the street and some of which treat it as adjacent to the street]; *In re Devon C.* (2000) 79 Cal.App.4th 929, 932–933 [relying on Veh. Code definitions of "street," "highway," and "sidewalk" and purposes of helmet law to hold that the sidewalk was part of the "street" as that term is used in the helmet law found at Veh. Code, § 21212, subd. (a)].)

The foray into other codes having supplied no consistent contrary answer, we return to the statute at issue. Subdivisions (a) and (b) of section 831.4 protect the city from liability arising from certain unpaved roads and (paved or unpaved) trails, while making clear that this protection does not extend to city streets, where the city remains liable for dangerous conditions under section 835. So nothing in the text of the statute permits the city to limit its liability for dangerous conditions on its streets by painting a lane marker and deeming one lane a trail. And we discern no statutory purpose that would justify dividing a roadway for which the city is responsible into a conjoined but legally divisible "street" and "trail," with the city's obligation to keep the property in a safe condition ending at one edge of or within the white stripe on the asphalt. (Cf. Veh. Code, § 21650, subd. (g) [referring to "any bicycle path within a highway"].) A contrary result would defeat the fundamental purpose of a bike lane—to protect cyclists, who are entitled to use city streets even without a bike lane. (See, e.g., Veh. Code, §§ 21200, subd. (a)(1), 21650.1; Sts. & Hy. Code, § 890.4, subd. (c) [describing bike routes that "provide a right-of-way on-street or off-street"].) We discern in section 831.4 no hint of

17

a legislative purpose to transform a roadway feature intended to protect cyclists into a shield against section 835 liability for dangerous conditions on city streets.[11]

Our analysis is not in conflict with cases holding that noncontiguous or physically separate bike paths are trails, even if paved and in urban settings. (See, e.g., *Burgueno*, *supra*, 243 Cal.App.4th at p. 1060 [applying § 831.4 immunity to university's "Great Mountain Bikeway" used by both recreational and commuter bicyclists]; *Amberger-Warren*, *supra*, 143 Cal.App.4th at p. 1079 [applying § 831.4 to park's paved pathway that was designed and used for recreational purposes].)[12] Paths, unlike city streets or the bike lanes within them, fit the accepted definitions of trails. (See *Amberger-Warren*, at p. 1079.) The separate character of the bike paths in such cases limit their contact with motor vehicle traffic. (See *Burgueno*, at p. 1055 [noting that bikeway separate from automobile traffic was only "at times" used by university service vehicles and emergency vehicles, despite one point of intersection with a "farm access road"]; *Amberger-Warren*, at p. 1081 [distinguishing pathway from sidewalk because not adjacent to a street or highway]; cf. Sts. & Hy. Code, § 890.4 [differentiating "bike paths" with "minimized" motorist crossflows from "bike lanes" and other bikeways shared with

---

[11] Section 831.4 has been interpreted to extend immunity to " 'bike paths, both paved and unpaved, to trails providing access to recreational activities, and to trails on which the activities take place.' " (*Burgueno*, *supra*, 243 Cal.App.4th at p. 1060.) Were we to deem the bike lane of a city street to be a trail merely because cycling *can* be recreational, the effect would be to perversely immunize cities for permitting the degradation of city streets despite their obvious commuter purpose.

[12] The Class II bikeway on Bailey Avenue is indicated only visually by the white stripe painted on the pavement. (Sts. & Hy. Code, § 890.4, subd. (b).) In contrast, a Class IV bikeway—a cycle track or separated bikeway—is separated from vehicular traffic by, for example but without limitation, "grade separation, flexible posts, inflexible physical barriers, or on-street parking." (Sts. & Hy. Code, § 890.4, subd. (d).) And Class I bikeways—bike paths or shared use paths—are "completely separated right[s]-of-way designated for the exclusive use of bicycles and pedestrians with crossflows by motorists minimized." (Sts. & Hy. Code, § 890.4, subd. (d).) So the bike lane on Bailey Avenue is two degrees of separation removed from a bike path.

or adjacent to motor vehicle traffic].) And insulating cities from liability for conditions on separate bike paths encourages cities to open their land for recreational use in a way that insulating cities from liability for conditions on streets and highways does not—streets and highways being essential to California communities for reasons independent of their recreational uses.

The city's separate statement set forth no facts that would show Bailey Avenue or its bicycle lane to meet accepted definitions of a "trail," including whether it was a city street. Rather, the separate statement simply lists recreational areas that can be accessed from Bailey Avenue and its bicycle lane. Absent any suggestion that the city is not a proper defendant, we infer on the summary judgment record that Bailey Avenue is, as it appears in the photos the city proffered, a city street or highway. The evidence thus failed to carry the city's initial burden on trail immunity.[13]

## C. *The City's Alternative Request for Summary Adjudication* [NOT CERTIFIED FOR PUBLICATION]

The city does not separately challenge the trial court's denial on procedural grounds of the city's alternative request for summary adjudication of each of Hu's causes of action. (See Cal. Rules of Court, rule 3,1350(b); *Holt v. Brock* (2022) 85 Cal.App.5th 611, 619.) Regardless, the city's request for summary adjudication turned on the same arguments about causation and trail immunity that we resolve in reviewing the summary judgment.

## III.   DISPOSITION

The judgment is reversed. Hu is entitled to his costs on appeal.

---

[13] Consistent with the foregoing analysis, we do not reach Hu's contention that the trial court erred in refusing to admit some of his opposition evidence.

_____
LIE, J.

WE CONCUR:


_____
GREENWOOD, P. J.



_____
GROVER, J.




*Hu v. City of San José*
H051724

Trial Court:        Santa Clara County Superior Court
                         Superior Court No.:  21CV378255

Trial Judge:        Hon. Evette D. Pennypacker

Counsel:            Del Rio & Caraway, Charles D. Caraway; and Sheila Pendergast
                         Law Corp., Sheila W. Pendergast for Plaintiff and Appellant.

                         Nora V. Frimann, City Attorney, B. Ardell Johnson, Jr., Assistant
                         City Attorney, and Senior Deputy City Attorneys Margo Laskowska
                         and Wesley M. Klimczak for Defendants and Respondents.